## IN THE UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF OHIO, EASTERN DIVISION

| | |
|---|---|
| PLEX CAPITAL, LLC<br>11184 Antioch Road<br>Suite 126<br>Overland Park, Kansas 66210<br><br>       Plaintiff,<br><br>vs.<br><br>GENEVA OPCO LLC D/B/A<br>GENEVA CENTER FOR<br>REHABILITATION AND NURSING<br>c/o Interstate Agent Services LLC<br>250 East 5th Street<br>15th Floor Suite 2353<br>Cincinnati, Ohio 45202<br><br>RIDGEWOOD MANOR, LLC D/B/A<br>RIDGEWOOD MANOR D/B/A<br>RIDGEWOOD MANOR NURSING<br>CENTER,<br>c/o Cogency Global Inc.<br>3958-D Brown Park Drive<br>Hilliard, Ohio 43026<br><br>CONCORD CARE CENTER OF<br>TOLEDO, INC., D/B/A CONCORD<br>CARE CENTER D/B/A THE VISTA<br>AT CONCORD CARE CENTER OF<br>TOLEDO D/B/A CONTINENTAL<br>HEALTH COMPANY OF TOLEDO,<br>LLC,<br>3121 Glanzman Road<br>Toledo, Ohio 43612<br><br><br>       Defendants. | Case No. _____<br><br>Judge _____<br><br>Magistrate _____<br><br>**Complaint** |

Plaintiff Plex Capital, LLC ("**Plex**"), by and through its undersigned counsel, hereby sues the Defendants Ridgewood Manor, LLC D/B/A Ridgewood Manor D/B/A Ridgewood Manor Nursing Center ("**Ridgewood Manor**"), Concord Care Center of Toledo, INC., D/B/A Concord Care Center D/B/A The Vista at Concord Care Center of Toledo D/B/A Continental Health Company of Toledo, LLC ("**Concord Care**"), and Geneva Opco LLC D/B/A Geneva Center for Rehabilitation and Nursing ("**Geneva**"), and as grounds therefore avers as follows:

## PARTIES

1.      Plaintiff Plex Capital, LLC (the "**Factor**" or "**Plex**") is a Kansas limited liability company with its principal place of business in Johnson County, Kansas.

2.      Defendant Ridgewood Manor, LLC D/B/A Ridgewood Manor D/B/A Ridgewood Manor Nursing Center ("**Ridgewood Manor**" or "**Account Debtor**") is an Ohio limited liability company that operates a nursing and rehabilitation facility and has its principal place of business in Maumee, Ohio.

3.      Defendant Concord Care Center of Toledo, INC., D/B/A Concord Care Center D/B/A The Vista at Concord Care Center of Toledo D/B/A Continental Health Company of Toledo, LLC ("**Concord Care**" or "**Account Debtor**") is a Delaware limited liability company that operates a nursing and rehabilitation facility and has its principal place of business in Toledo, Ohio.

4.      Defendant Geneva Opco LLC D/B/A Geneva Center for Rehabilitation and Nursing ("**Geneva**" or "**Account Debtor**") is an Ohio limited liability company that operates a nursing and rehabilitation facility and has its principal place of business in Geneva, Ohio.

## JURISDICTION AND VENUE

2

5.      This Court has original subject matter jurisdiction over the claims in this matter, pursuant to 28 U.S.C. § 1332(a). Plex is a citizen of the State of Kansas due to it having been formed as a Kansas limited liability company, having its principal place of business in Kansas. Each of Plex's members is an individual who is citizen of Kansas.

6.      Ridgewood Manor is a citizen of the State of Ohio due to it having been formed as an Ohio limited liability company and having its principal place of business in Ohio.  Upon information and belief, none of Ridgewood Manor's members is a citizen of Kansas.

7.      Concord Care is a citizen of the State of Ohio due to it having its principal place of business in Ohio.  Upon information and belief, none of Concord Care's members is a citizen of Kansas.

8.      Geneva is a citizen of the State of Ohio due to it having been formed as an Ohio limited liability company and having its principal place of business in Ohio.  Upon information and belief, none of Geneva's members is a citizen of Kansas.

9.      The amount in controversy, without interest and costs, exceeds the sum or value specified by 28 U.S.C. § 1332(a).

10.      Pursuant to 28 U.S.C. § 1367, this Court has supplemental jurisdiction over all claims that are so related to the claims in the action within its original jurisdiction that they form part of the same case or controversy.

11.      Venue is proper in this Court pursuant to either 28 U.S.C. § 1391(b)(1) in that this action is filed in a judicial district in which one or more defendant resides, and/or § 1391(b)(2) in that this action is filed in a judicial district in which a substantial part of the events or omissions giving rise to the claims occurred or a substantial part of property that is the subject of the action is situated.

3

## CONDITIONS PRECEDENT

12.     All conditions precedent to the bringing of this action have been performed, excused, and/or waived.

## BACKGROUND FACTS

13.     Plex is in the factoring business, which business involves, *inter alia*, the purchasing of accounts ("**Accounts**")[1] from businesses ("**Factoring Clients**") with whom it has formed a contractual relationship, the terms of which are generally contained in invoices.

14.     Within the factoring industry, the entity that purchases[2] Accounts is commonly referred to as the "Factor" or "Purchaser" of Accounts, in this case Plex. The entity from whom

---

[1] For the purpose of this pleading, the term 'Accounts' is intended to have the meaning given to this term by the UCC, as adopted throughout the United States. A typical uniform definition may be found in Ohio's version of the UCC, and the term means "a right to payment of a monetary obligation, whether or not earned by performance, (i) for property that has been or is to be sold…, (ii) for services rendered."  Ohio Rev. Code Ann. § 1309.102.

[2] For the purpose of this pleading, the term "purchase" is intended to have the meaning given to this term by the Uniform Commercial Code ("**UCC**"), as adopted throughout the United States. A typical uniform definition may be found in Ohio's version of the UCC, and the term means "taking by sale, lease, discount, negotiation, mortgage, pledge, lien, security interest, issue or reissue, gift, or any other voluntary transaction creating an interest in property." Ohio Rev. Code Ann. § 1301.201.

---

the Accounts are purchased is commonly referred to as the Factoring Client, or "Seller". The Factoring Client's customer for whom the Seller has performed service(s) or sold good(s) and to whom an invoice is ordinarily issued to evidence the terms of sale and request payment is commonly referred to as the "Customer" or "Account Debtor."[3]

15.     On or about November 11, 2021, Trusential LLC ("**Trusential**")[4] entered into an agreement with Plex titled "Accounts Purchase and Security Agreement" (as amended by that Personnel Staffing Rider to Accounts Purchase and Security Agreement, hereinafter the "**Factoring Agreement**,"). A true and correct copy of the Factoring Agreement is attached hereto as **Exhibit A**, but for any terms or provisions which are deemed confidential, which have been removed or redacted.

---

[3] For the purpose of this pleading, the term "Account Debtor" is intended to have the meaning given to this term by the UCC, as adopted throughout the United States. A typical uniform definition may be found in Ohio's version of the UCC and the term means "a person obligated on an account." Ohio Rev. Code Ann. § 1309.102.

[4] On August 3, 2022, Trusential filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code in the United States Bankruptcy Court for the Northern District of Ohio. On September 9, 2022, the Bankruptcy Court entered an Order granting Motion for Plex Capital for Relief from Stay, in order to authorize Plex to enforce all rights to receive payment of any unpaid and outstanding accounts owing by the Account Debtors, Ridgewood Manor, Concord Care and Geneva.

16.     Cyona Taylor-Randolf, as CEO, and an authorized representative of Trusential executed the Factoring Agreement on behalf of Trusential in favor of Plex.

17.     Pursuant to the Factoring Agreement, Plex contractually purchased Accounts from Trusential ("**Purchased Accounts**") arising from Trusential's placement of nurse staffing services under certain staffing agreement(s) between Trusential and its customers (i.e., the **Staffing Services** as more specifically identified below.) *See* **Exhibit A**, § 2.

18.     In addition, Trusential granted Plex a first priority security interest[5] in all, or substantially all of Trusential's property (i.e., the "Collateral"), including, but not limited to, all Accounts and all proceeds to secure all monetary and non-monetary obligations under the Factoring Agreement ("**Collateral**").

19.     Until all of the Obligations under the Factoring Agreement have been paid in full, **whether or not Trusential is in default under the Factoring Agreement**, Trusential expressly and irrevocably granted a power of attorney to Plex to exercise the authority to do each of the following:

> 10.1.1 Receive, take, endorse, assign, deliver, accept and deposit, in the name of Purchaser [Plex] or Seller [Trusential], any and all Proceeds of any Collateral securing the Obligations or the Proceeds thereof;
>
> 10.1.2 Take or bring, in the name of Purchaser or Seller, all steps, actions, suits or proceedings deemed by Purchaser necessary or desirable to effect collection of or

---

[5] Pursuant to Ohio's version of the UCC, Ohio Rev. Code Ann. § 1301.201 (B)(35), the term "Security Interest" means "an interest in personal property or fixtures which secures payment or performance of an obligation. 'Security interest' includes any interest of a consignor and a buyer of accounts, chattel paper, a payment intangible, or a promissory note in a transaction that is subject to Chapter 1309."

other realization upon any unpaid, or wrongfully paid over the notice requirement of Section 12.3, Accounts and Purchased Accounts;

10.1.3 Pay any sums necessary to discharge any lien or encumbrance which is or may become senior to Purchaser's ownership rights in the Purchased Accounts or Security Interest in the Collateral, which sums shall be included as Obligations hereunder, and in connection with which sums the Late Charge shall accrue and shall be due and payable;

10.1.4 Notify any Payor [i.e., Account Debtor] obligated with respect to any Account, that all rights to receive payment of Accounts (Purchased and non-Purchased Accounts) have been unconditionally assigned by Seller to Purchaser and that all payments must be made solely and exclusively to the order of and directly delivered to Purchaser; that Purchaser has also been assigned all rights to enforce any action or claim in connection with the above-stated assignments, including, but not limited to, all rights in connection with the underlying contracts and agreements giving rise or related to the Accounts. All enforcement rights provided herein may be undertaken at any time and in any manner that Purchaser may determine in its Business Judgment, either in the name of Purchaser or Seller. Nothing contained in this Agreement shall alter or adversely affect Purchaser's sole and exclusive right to enforce the right to receive payment of all Purchased and non-Purchased Accounts, regardless of any Business Judgment made as to enforcement of any breach of an underlying contract or any other agreement between Seller and a Purchaser;

10.1.5 Communicate directly with Seller's Payors to, among other things, verify the amount and validity of any Account created by Seller.

(brackets added to include party reference).

20.     In addition to the rights and powers granted to Plex in section 10.1.1 through 10.1.5 in the Factoring Agreement, after an Event of Default, pursuant to Section 10.1.6.2 Plex is also authorized to, among other things:

Extend the time of payment of, compromise or settle for cash, credit, return of merchandise, and upon any terms or conditions, any and all Accounts and discharge or release any Payor without affecting any of the Obligations.

21.     In addition, section 10.2. of the Factoring Agreement states that:

Seller [Trusential] authorizes Purchaser [Plex] to accept, endorse and deposit on behalf of Seller any checks tendered by a Payor "in full payment" of its obligation to Seller. Seller shall not assert against Purchaser any claim arising therefrom,

irrespective of whether such action by Purchaser effects an accord and satisfaction of Seller's claims, under §3-311 of the Uniform Commercial Code, or otherwise.

22.     Pursuant to the Factoring Agreement, "Before sending any Invoice to an Account Debtor, Seller [here, Trusential] shall cause same to be conspicuously marked with a notice of assignment and a duty to pay Purchaser ("Notification of Assignment") in the form and manner as may be required by Purchaser." **Exhibit A** §12.3.

23.     Section 12.7 in the Factoring Agreement establishes Plex's right to dominion and control over all account debtor payments and/or proceeds of any Accounts, and reads, in relevant part, as follows:

> …Seller shall remit to Purchaser, in kind, any Negotiable Instrument Seller receives from a Payor on an Account that is paid in violation of the Notification of Assignment as provided in Section 12.3. Moreover, in the event Seller deposits any Negotiable Instrument or receives payment electronically from a Payor after having received a Notification of Assignment as provided in Section 12.3, such payment and Proceeds shall be held, in trust, by Seller for the exclusive benefit of Purchaser and Seller shall remit and pay such trust funds to Purchaser by no later than the second (2nd) Business Day following the date of receipt by Seller.

(underlining added).

24.     In order to effect Plex's rights to receive payment, as the assignee, Plex issued a letter directly to each Account Debtor that reads as follows:

**NOTICE OF ASSIGNMENT AND PAYMENT REDIRECTION LETTER**

Dear Customer:

In order to accommodate the growth of our business, we have retained the services of PLEX Capital, LLC ("PLEX") to fund and manage our accounts, which arrangement includes our irrevocable sale and assignment to PLEX of all of our rights to receive payment on our currently outstanding and all future accounts and payment intangibles under all applicable laws including 9-406 of the Uniform Commercial Code. This change in procedure should allow us to serve you more efficiently.

ACCORDINGLY, IMMEDIATELY AFTER YOUR RECEIPT OF THIS NOTICE, PAYMENTS ON ALL INVOICES SHALL BE MADE SOLELY AND EXCLUSIVELY TO PLEX, AS FOLLOWS:

| By Mail: | By ACH: |
|---|---|
| **PLEX Capital, LLC c/o** | **PLEX Capital, LLC** |
| **Trusential LLC** | **Account No.: XXXXX** |
| **XXXXX** | **Routing No.: XXXXX** |
| **XXXXX** | **Remittance: XXXXX** |

THIS NOTICE OF ASSIGNMENT AND PAYMENT REDIRECTION LETTER, WHICH CHANGES THE PAYEE ON OUR ACCOUNTS, IS EFFECTIVE IMMEDIATELY AND DUE TO POTENTIAL CYBER-SCAMMING, MAY NOT IN ANY WAY BE CHANGED, MODIFIED, ALTERED, REVOKED (COLLECTIVELY, "CHANGED") BY ANY FORM OF ELECTRONIC COMMUNICATION. THIS NOTICE OF PAYMENT REDIRECTION LETTER MAY ONLY BE CHANGED BY PLEX'S WRITTEN INSTRUCTIONS ISSUED BY AN AUTHORIZED REPRESENTATIVE OF PLEX AND DELIVERED TO YOU BY CERTIFIED OR REGISTERED MAIL. PAYMENT TO ANYONE OTHER THAN PLEX WILL NOT DISCHARGE YOUR OBLIGATION TO PAY ANY SUCH ACCOUNT OR PAYMENT INTANGIBLE.

If you have any questions concerning this notification of assignment, please contact:

**PLEX Capital, LLC**
**Attention: Josh Goode**
**(913) 229-4224**

| Sincerely, | Confirmed, |
|---|---|
| Trusential | Plex Capital, LLC |
| By: Cyona Taylor-Randolph | By: Josh Goode |
| Title: CEO | Title: Chief Operating Officer |

(the "**Letter Notice of Assignment**"). (Bolding supplied). (private banking and contact information (and original signatures) removed as denoted by 'XXXXX'). The form of Letter Notice of Assignment is attached hereto as **Exhibit B**.

25.     Plex's Letter Notice of Assignment was delivered to Ridgewood Manor, Concord Care and Geneva.

26.     Trusential performed the Staffing Services for the respective Account Debtors, as evidenced by the invoices Trusential issued to the Accounts Debtor reflecting the terms of payment, as follows:

| Account Debtor | Invoice Number | Invoice Due Date | Invoice Amount |
|---|---|---|---|
| Geneva | 1061 | 1/19/2022 | $11,053.74 |
| | 1063 | 1/26/2022 | $30,368.60 |
| | 1071 | 2/2/2022 | $59,626.83 |
| | 1074 | 2/10/2022 | $104,567.33 |
| | 1081 | 2/18/2022 | $145,646.11 |
| | 1086 | 2/23/2022 | $59,521.13 |
| | | | Total Due: $410,783.74 |
| | | | |
| Ridgewood Manor | 1056 | 1/13/2022 | $7,629.30 |
| | 1060 | 1/19/2022 | $27,052.61 |
| | 1065 | 1/27/2022 | $18,687.80 |
| | 1067 | 1/27/2022 | $1,500.00 |
| | 1070 | 2/2/2022 | $29,717.00 |
| | 1075 | 2/11/2022 | $37,101.58 |
| | 1077 | 2/13/2022 | $459.91 |
| | 1083 | 2/18/2022 | $39,723.90 |
| | 1087 | 2/24/2022 | $25,421.35 |
| | | | |
| | | | Total Due: $187,293.45 |
| Concord Care | 1055 | 1/13/2022 | $10,554.77 |
| | 1057 | 1/18/2022 | $48,252.50 |
| | 1062 | 1/27/2022 | $35,892.77 |
| | 1066 | 1/27/2022 | $9,000.00 |
| | 1068 | 2/2/2022 | $29,374.93 |
| | 1073 | 2/10/2022 | $29,232.05 |
| | 1082 | 2/18/2022 | $26,037.03 |
| | 1085 | 2/24/2022 | $13,466.95 |
| | | | Total Due: $201,811.00 |

(the "**Matured and Unpaid Invoices**"). The Matured and Unpaid Invoices are attached hereto as **Composite Exhibit C** (for Ridgewood Manor), **Composite Exhibit D** (for Concord Care) and **Composite Exhibit E** (for Geneva); respectively.

27.     Each Matured and Unpaid Invoices contained a "Net 30" payment term, meaning that each invoice is payable 30 days from the date the Staffing Service were performed by Trusential.

28.     The Matured and Unpaid Invoices have matured, and payment is due and owing in accordance with the payment terms reflected in the invoices.

29.     Plex has not received any payments from any of the Account Debtors of any of the sums due on the Matured and Unpaid Invoices.

30.     Article 9 of the Uniform Commercial Code, §9-406(a), as adopted in Ohio as Ohio Rev. Code Ann. § 1309.406, states as follows:

> **1309.406 Discharge of account debtor; notification of assignment; identification and proof of assignment; restrictions on assignment of accounts; chattel paper; payment intangibles, and promissory notes ineffective**
>
> (A) Subject to divisions (B) to (I) of this section, an account debtor on an account, chattel paper, or payment intangible may discharge its obligation by paying the assignor [Trusential] **until, but not after, the account debtor [here, Ridgewood Manor, Concorde Care and Geneva] receives a notification, authenticated by the assignor [Trusential] or the assignee [Plex], that the amount due or to become due has been assigned and that payment is to be made to the assignee [Plex]. After receipt of the notification, the account debtor [here, Ridgewood Manor, Concorde Care and Geneva] may discharge its obligation by paying the assignee [Plex] and may not discharge the obligation by paying the assignor [Trusential].** (bolding supplied).[6]

---

[6] Ohio Rev. Code Ann. § 1309.406 has not been referenced to imply that Plex seeks to assert any private right of action thereunder, which it is not, instead this statute is being referenced for the purpose of noting the restrictions placed on account debtors, like Ridgewood Manor, Concord Care and Geneva, in respect to its obligation to pay Plex after it received the Letter Notice of Assignment instead of paying Trusential

31.    Due to the content and fact of delivery of the Letter Notice of Assignment to each Account Debtor in accordance with UCC § 9-406, and applicable common law, each Account Debtor could only lawfully discharge its obligation on the Matured and Unpaid Invoices by remitting payment to Plex; paying Trusential would not discharge the obligation.

32.    On June 2, 2022, Plex's counsel, on behalf of Plex issued a demand letter to each of the Account Debtors.  A true and correct copy of Plex's letter is attached hereto as **Exhibit E**.

33.    Plex has not received payment of the amounts due and owing to Plex by the Account Debtor as evidenced by the Matured and Unpaid Invoices.

## COUNT I
### Action to Collect Matured and Unpaid Accounts owing by Ridgewood Manor, and Nondischargeable of any Payments Wrongfully Paid

34.    Plex realleges and incorporates by reference paragraphs 1 through 33 above as if fully set forth herein.

35.    Pursuant to 9-607 of the UCC, adopted in Ohio as Ohio Rev. Code Ann. §1309.607, and applicable common law, Plex, as assignee of the right to receive payment, is entitled to collect from Ridgewood Manor, the account debtor all of the amounts due and owing by Ridgewood Manor on the Matured and Unpaid Invoices.

36.    Ohio Rev. Code Ann. § 1309.607, states, in relevant part:

Collection and enforcement generally.

**(A) If so agreed, and in any event after default, a secured party** [here, Plex]:

(1) may notify an account debtor [here, Ridgewood Manor] or other person obligated on collateral to make payment or otherwise render performance to or for the benefit of the secured party [here, Plex];

(2) may take any proceeds to which the secured party [here, Plex] is entitled under section 1309.315 of the Revised Code;

(3) **may enforce the obligations of an account debtor [here, Trusential] or other person obligated on collateral and exercise the rights of the debtor [here, Trusential] with respect to the obligation of the account debtor [here, Ridgewood Manor] or other person obligated on collateral to make payment or otherwise render performance to the debtor [here, Trusential],** and with respect to any property that secures the obligation of the account debtor [here, Ridgewood Manor] or other person obligated on the collateral…

(emphasis added).

37.     In accordance with the Staffing Agreement between Ridgewood Manor and Trusential, Trusential materially and substantially performed the Staffing Services to and for the benefit of Ridgewood Manor, and in connection therewith, Ridgewood Manor became obligated on all Accounts arising under the agreement between Ridgewood Manor and Trusential including the Matured and Unpaid Invoices, which were issued to Ridgewood Manor by Trusential for payment for the Staffing Services.

38.     Ridgewood Manor received the Matured and Unpaid Invoices.

39.     Pursuant to Ohio's version of UCC § 9-406(a) and § 9-607, and applicable common law, Ridgewood Manor could only discharge its obligation on the Matured and Unpaid Invoices by paying Plex after receipt of Plex's Letter Notice of Assignment, and payment to Trusential (or any other person) is ineffective to discharge Ridgewood Manor's obligation, so Plex is entitled to enforce payment in connection therewith.

40.     Ridgewood Manor is and remains liable to Plex for all sums due on the Matured and Unpaid Invoices, and any other unpaid, open and matured Accounts in respect to which

payment is or becomes due from Ridgewood Manor in connection with Staffing Services provided to Ridgewood Manor by Trusential.[7]

41.     Plex has suffered damages as a result of Ridgewood Manor's failure to timely pay Plex including (without limitation) all sums due on the Matured and Unpaid Invoices.

42.     Ridgewood Manor owes Plex the sum of not less than $187,293.45 on the Matured and Unpaid Invoices together with all amounts due and owing in respect to any other invoices, for which payment was not made to Plex, on or after the date of delivery of the initial Plex Letter Notice of Assignment to Ridgewood Manor, plus prejudgment interest at the rate prescribed by law.

**WHEREFORE**, Plex Capital LLC respectfully request that this Court award all damages, legal and equitable, including (without limitation) compensatory damages against Defendant, Ridgewood Manor, in the amount of $187,293.45, and any other amounts owing to Plex, including, without limitation any other accounts that Plex may discover in this case is or becomes due and payable by Ridgewood Manor and any other accounts in respect to which Ridgewood Manor misdirected payments after receipt of the Plex's Notices of Assignment, together with prejudgment interest and such other relief as this Court deems necessary and proper.

---

[7] Plex's claim against each Account Debtor includes any additional Trusential invoices that during the discovery period Plex may learn the Account Debtor misdirected payment by paying Trusential, instead of paying Plex after the Account Debtor's receipt of Plex's Notice of Assignment.

## COUNT II
### Action for Account Stated against Ridgewood Manor

43.     Plex realleges and incorporates by reference paragraphs 1 through 33 above as if fully set forth herein.

44.     Trusential and Ridgewood Manor are parties to a Staffing Services Agreement, pursuant to which Trusential agreed to perform the Staffing Services.

45.     Pursuant to the Staffing Services Agreement between Trusential and Ridgewood Manor, Ridgewood Manor contracted Trusential to perform the Staffing Services as reflected in the Matured and Unpaid Invoices.

46.     The Matured and Unpaid Invoices reflect the previous transactions between the parties establishing a debtor-creditor relationship.

47.     The Matured and Unpaid Invoices reflect the terms of payment of an express agreement between the parties on the amount due from Ridgewood Manor to Trusential for the Staffing Services performed by Trusential.

48.     Ridgewood Manor promised to pay Trusential the face amount due for the Staffing Services performed by Trusential as reflected in the invoices.

49.     Ridgewood Manor received the Matured and Unpaid Invoices.

50.     Ridgewood Manor did not object to the invoices within a reasonable time after its receipt of the invoices issued by Trusential.

51.     Pursuant the terms of the Staffing Agreement and the usual course dealings between the parties, Ridgewood Manor assented to the account stated, therefore striking a balance owing on the invoices by Ridgewood Manor.

52.     Pursuant to this action for account stated claim for relief, Ridgewood Manor is and remains liable to Plex, as assignee of the right to receive payment for all sums due on the Matured

and Unpaid Invoices issued to Ridgewood Manor in the total amount of $187,293.45, plus prejudgment interest at the rate prescribed by law.

**WHEREFORE**, Plex Capital LLC respectfully request that this Court award damages to Plex against Ridgewood Manor in the amount of $187,293.45, together with prejudgment interest and such other relief as this Court deems necessary and proper.

## COUNT III
### Action to Collect Matured and Unpaid Accounts owing by Concord Care, and Nondischargeability of any Payments Wrongfully Paid

53. Plex realleges and incorporates by reference paragraphs 1 through 33 above as if fully set forth herein.

54. Pursuant to 9-607 of the UCC, adopted in Ohio as Ohio Rev. Code Ann. §1309.607, and applicable common law, Plex, as assignee of the right to receive payment, is entitled to collect from Concord Care, the account debtor all of the amounts due and owing by Concord Care on the Matured and Unpaid Invoices.

55. Ohio Rev. Code Ann. § 1309.607, states, in relevant part:

Collection and enforcement generally.

**(A) If so agreed, and in any event after default, a secured party** [here, Plex]:

(1) may notify an account debtor [here, Concord Care] or other person obligated on collateral to make payment or otherwise render performance to or for the benefit of the secured party [here, Plex];

(2) may take any proceeds to which the secured party [here, Plex] is entitled under section 1309.315 of the Revised Code;

**(3) may enforce the obligations of an account debtor [here, Trusential] or other person obligated on collateral and exercise the rights of the debtor [here, Trusential] with respect to the obligation of the account debtor [here, Concord Care] or other person obligated on collateral to make payment or otherwise render**

**performance to the debtor [here, Trusential],** and with respect to any property that secures the obligation of the account debtor [here, Concord Care] or other person obligated on the collateral...

(emphasis added).

56.     In accordance with the Staffing Agreement between Concord Care and Trusential, Trusential materially and substantially performed the Staffing Services to and for the benefit of Concord Care, and in connection therewith, Concord Care became obligated on all Accounts arising under the agreement between Concord Care and Trusential including the Matured and Unpaid Invoices, which were issued to Concord Care by Trusential for payment for the Staffing Services.

57.     Concord Care received the Matured and Unpaid Invoices.

58.     Pursuant to Ohio's version of UCC § 9-406(a) and § 9-607, and applicable common law, Concord Care could only discharge its obligation on the Matured and Unpaid Invoices by paying Plex after receipt of Plex's Letter Notice of Assignment, and payment to Trusential (or any other person) is ineffective to discharge Concord Care's obligation, so Plex is entitled to enforce payment in connection therewith.

59.     Concord Care is and remains liable to Plex for all sums due on the Matured and Unpaid Invoices, and any other unpaid, open and matured Accounts in respect to which payment is or becomes due from Concord Care in connection with Staffing Services provided to Concord Care by Trusential, and any other invoices that during the discovery period Plex learns that Concord Care misdirected payment to Trusential to satisfy Concord Care's performance of Staffing Services.

60.     Plex has suffered damages as a result of Concord Care's failure to timely pay Plex including (without limitation) all sums due on the Matured and Unpaid Invoices.

61.     Concord Care owes Plex the sum of not less than $201,811.00 on the Matured and Unpaid Invoices together with all amounts due and owing in respect to any other invoices, for which payment was not made to Plex, on or after the date of delivery of the initial Plex Letter Notice of Assignment to Concord Care, plus prejudgment interest at the rate prescribed by law.

**WHEREFORE**, Plex Capital LLC respectfully request that this Court award all damages, legal and equitable, including (without limitation) compensatory damages against Defendant, Concord Care, in the amount of $201,811.00, and any other amounts owing to Plex, including, without limitation any other accounts that Plex may discover in this case is or becomes due and payable by Concord Care and any other accounts in respect to which Concord Care misdirected payments after receipt of the Plex's Notices of Assignment, together with prejudgment interest and such other relief as this Court deems necessary and proper.

## COUNT IV
### Action for Account Stated against Concord Care

62.     Plex realleges and incorporates by reference paragraphs 1 through 33 above as if fully set forth herein.

63.     Trusential and Concord Care are parties to a Staffing Services Agreement, pursuant to which Trusential agreed to perform the Staffing Services.

64.     Pursuant to the Staffing Services Agreement between Trusential and Concord Care, Concord Care contracted Trusential to perform the Staffing Services as reflected in the Matured and Unpaid Invoices.

65.     The Matured and Unpaid Invoices reflect the previous transactions between the parties establishing a debtor creditor relationship.

18

66.     The Matured and Unpaid Invoices reflect the terms of payment of an express agreement between the parties on the amount due from Concord Care to Trusential for the Staffing Services performed by Trusential.

67.     Concord Care promised to pay Trusential the face amount due for the Staffing Services performed by Trusential as reflected in the invoices.

68.     Concord Care received the Matured and Unpaid Invoices.

69.     Pursuant to Ohio's version of UCC § 9-406(a) and § 9-607, and applicable common law, Concord Care could only discharge its obligation on the Matured and Unpaid Invoices by paying Plex after receipt of Plex's Letter Notice of Assignment, and payment to Trusential or other person is ineffective to discharge Concord Care's obligation, so Plex is entitled to enforce payment in connection therewith.

70.     Concord Care did not object to the invoices within a reasonable time after its receipt of the invoices issued by Trusential.

71.     Pursuant the terms of the Staffing Agreement and the usual course dealings between the parties, Concord Care assented to the account stated, therefore striking a balance owing on the invoices by Concord Care.

72.     Pursuant to this action for account stated claim for relief, Concord Care is and remains liable to Plex, as assignee of the right to receive payment for all sums due on the Matured and Unpaid Invoices issued to Concord Care in the total amount of $201,811.00, plus prejudgment interest at the rate prescribed by law.

**WHEREFORE**, Plex Capital LLC respectfully request that this Court award all damages in the amount of $201,811.00, together with prejudgment interest and such other relief as this Court deems necessary and proper.

**COUNT V**
**Action to Collect Matured and Unpaid Accounts owing by Geneva, and**
**Nondischargeability of any Payments Wrongfully Paid**

73.     Plex realleges and incorporates by reference paragraphs 1 through 33 above as if fully set forth herein.

74.     Pursuant to 9-607 of the UCC, adopted in Ohio as Ohio Rev. Code Ann. §1309.607, and applicable common law, Plex, as assignee of the right to receive payment, is entitled to collect from Geneva, the account debtor all of the amounts due and owing by Geneva on the Matured and Unpaid Invoices.

75.     Ohio Rev. Code Ann. § 1309.607, states, in relevant part:

Collection and enforcement generally.

**(A) If so agreed, and in any event after default, a secured party** [here, Plex]:

(1) may notify an account debtor [here, Geneva] or other person obligated on collateral to make payment or otherwise render performance to or for the benefit of the secured party [here, Plex];

(2) may take any proceeds to which the secured party [here, Plex] is entitled under section 1309.315 of the Revised Code;

(3) **may enforce the obligations of an account debtor [here, Trusential] or other person obligated on collateral and exercise the rights of the debtor [here, Trusential] with respect to the obligation of the account debtor [here, Geneva] or other person obligated on collateral to make payment or otherwise render performance to the debtor [here, Trusential],** and with respect to any property that secures the obligation of the account debtor [here, Geneva] or other person obligated on the collateral…

(emphasis added).

76.     In accordance with the Staffing Agreement between Geneva and Trusential, Trusential materially and substantially performed the Staffing Services to and for the benefit of

Geneva, and in connection therewith, Geneva became obligated on all Accounts arising under the agreement between Geneva and Trusential including the Matured and Unpaid Invoices, which were issued to Geneva by Trusential for payment for the Staffing Services.

77.    Geneva received the Matured and Unpaid Invoices.

78.    Pursuant to Ohio's version of UCC § 9-406(a) and § 9-607, and applicable common law, Geneva could only discharge its obligation on the Matured and Unpaid Invoices by paying Plex after receipt of Plex's Letter Notice of Assignment, and payment to Trusential (or any other person) is ineffective to discharge Geneva's obligation, so Plex is entitled to enforce payment in connection therewith.

79.    Geneva is and remains liable to Plex for all sums due on the Matured and Unpaid Invoices, and any other unpaid, open and matured Accounts in respect to which payment is or becomes due from Geneva in connection with Staffing Services provided to Geneva by Trusential, and any other invoices that during the discovery period Plex learns that Geneva misdirected payment to Trusential to satisfy Geneva's performance of Staffing Services.

80.    Plex has suffered damages as a result of Geneva's failure to timely pay Plex including (without limitation) all sums due on the Matured and Unpaid Invoices.

81.    Geneva owes Plex the sum of not less than $410,783.74 on the Matured and Unpaid Invoices together with all amounts due and owing in respect to any other invoices, for which payment was not made to Plex, on or after the date of delivery of the initial Plex Letter Notice of Assignment to Concord Care, plus prejudgment interest at the rate prescribed by law.

82.    **WHEREFORE**, Plex Capital LLC respectfully request that this Court award all damages, legal and equitable, including (without limitation) compensatory damages against Defendant, Geneva, in the amount of $410,783.74, and any other amounts owing to Plex,

including, without limitation any other accounts that Plex may discover in this case is or becomes due and payable by Geneva and any other accounts in respect to which Geneva misdirected payments after receipt of the Plex's Notices of Assignment, together with prejudgment interest and such other relief as this Court deems necessary and proper.

## COUNT VI
### Action for Account Stated against Geneva

83.    Plex realleges and incorporates by reference paragraphs 1 through 33 above as if fully set forth herein.

84.    Trusential and Geneva are parties to a Staffing Services Agreement, pursuant to which Trusential agreed to perform the Staffing Services.

85.    Pursuant to the Staffing Services Agreement between Trusential and Geneva, Geneva contracted Trusential to perform the Staffing Services as reflected in the Matured and Unpaid Invoices.

86.    The Matured and Unpaid Invoices reflect the previous transactions between the parties establishing a debtor creditor relationship.

87.    The Matured and Unpaid Invoices reflect the terms of payment of an express agreement between the parties on the amount due from Geneva to Trusential for the Staffing Services performed by Trusential.

88.    Geneva promised to pay Trusential the face amount due for the Staffing Services performed by Trusential as reflected in the invoices.

89.    Geneva received the Matured and Unpaid Invoices.

90.    Pursuant to Ohio's version of UCC § 9-406(a) and § 9-607, and applicable common law, Geneva could only discharge its obligation on the Matured and Unpaid Invoices by paying Plex after receipt of Plex's Letter Notice of Assignment, and payment to Trusential or other person

is ineffective to discharge Geneva's obligation, so Plex is entitled to enforce payment in connection therewith.

91.     Geneva did not object to the invoices within a reasonable time after its receipt of the invoices issued by Trusential.

92.     Pursuant the terms of the Staffing Agreement and the usual course dealings between the parties, Geneva assented to the account stated, therefore striking a balance owing on the invoices by Geneva.

93.     Pursuant to this action for account stated claim for relief, Geneva is and remains liable to Plex, as assignee of the right to receive payment for all sums due on the Matured and Unpaid Invoices issued to Geneva in the total amount of $410,783.74, plus prejudgment interest at the rate prescribed by law.

**WHEREFORE**, Plex Capital LLC respectfully request that this Court award all damages in the amount of $410,783.74, together with prejudgment interest and such other relief as this Court deems necessary and proper.


Respectfully submitted,


PLAINTIFF PLEX CAPITAL, LLC
By their attorney,


*/s/ Eric T. Deighton*
CARLISLE, McNELLIE, RINI,
KRAMER & ULRICH CO., L.P.A.
24755 Chagrin Boulevard, Suite 200
Cleveland, Ohio 44122
(216) 360-7200 phone
(216) 360-7210 fax
e-mail:  edeighton@carlisle-law.com